### DREYFUSS & SON v. DINE.

No. 11862.

Court of Civil Appeals of Texas. Dallas.

Jan. 25, 1936.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellant.

Saner, Saner & Jack, of Dallas, for appellee.

JONES, Chief Justice.

In a suit in a district court of Dallas county, appellee, Harry Dine, sought to recover judgment for damages because of the alleged wrongful breach by appellant, Dreyfuss & Son, of a written contract of employment as general manager of a general mercantile business owned by appellant, a corporation, and conducted in the city of Dallas. In the trial of the case to the court without the intervention of a jury, appellee recovered judgment in the amount of $27,401.05, which sum includes accrued interest. From this judgment appellant has duly perfected an appeal, and the following is a statement of the case:

At the time the contract of employment was entered into, appellee was residing in the city of Los Angeles, Cal., and held the position of general manager of a large mercantile business, similar to that operated by appellant. After negotiations, which extended over a long period of time, the parties to this contract reached an agreement as to terms, and on April 30, 1931, the written contract in suit was executed, under which appellee was to take charge as general manager of appellant's Dallas store on July 1, 1931, and to continue in such employment for a period of two years; that is, until June 30, 1933. As compensation for appellee's services as general manager, appellant agreed to pay, for the contract period, the sum of $47,500; $22,500 of this sum to be paid for the first year in twelve equal monthly installments, the due date of each installment being the last day of the calendar month; for the second year, appellee was to receive $25,000, to be paid in twelve equal monthly installments, an installment to become due on the last day of each calendar month. The contract is brief, and the only part of it which defines appellee's duties, as general manager, is that he "agrees that he will devote his time and best efforts to his duties as such general manager in said store."

Appellee had had considerable experience as general manager of mercantile establishments of the size and character of appellant's, and this record reflects that appellant sought the services of appellee, rather than that appellee sought employment with appellant. Appellant began negotiations to secure the services of appellee in the spring of 1930, and intermittently continued such negotiations until an agreement was reached and the employment contract executed.

Dreyfuss & Son is owned and controlled by another corporation, with headquarters in Kansas City, of which a Mr. Woolf is the executive and managerial head; the corporate name of this corporation is Woolf Bros., and Herbert M. Woolf is its president and managerial head. It was Mr. Woolf who conducted the negotiations on the part of Dreyfuss & Son which culminated in the employment contract under consideration. Mr. Woolf, during the first seven months of appellee's employment, made several trips to Dallas, and apparently kept in touch with appellee and his work as general manager. On February 16, 1932, Mr. Woolf wrote a letter to appellee, suggesting that he agree to reduce the contract amount of his salary. To this letter appellee replied that he was unable to comply with the request. Prior to this request, the record does not reflect any substantial criticism of appellee's performance of his duties as general manager. Following appellee's refusal to accede to the request to reduce his salary, at which Mr. Woolf states he was "very much shocked," criticisms of appellee's work began. On April 11, 1932, Mr. Woolf came to Dallas and demoted appellee, with no reduction in salary, from his position of general manager to that of a floorwalker, with the duty to observe the employees, and to make such suggestions to the manager placed in charge that appellee's observations might indicate to him were for the best interest of the business. Appellee did not agree to this demotion, but remained in the employment of appellant at the contract salary until June 20, 1932, when he was finally discharged. Appellee was paid his salary to June 15, 1932, and has received no salary since. After he was discharged, appellee worked diligently to secure other employ-

ment, and did finally succeed in entering the services of Washer Bros. of Fort Worth, who conduct a store similar to that of appellant. This latter employment began May 24, 1933. For such services he was paid, during the remaining part of his contract time with appellant, the sum of $100 a week. At the time of the trial he was drawing $7,000 a year as merchandise manager of Washer Bros.' store. The judgment gave appellant credit for the amount appellee received from Washer Bros. during his contract time with appellant.

Appellant defended the suit on the general ground that appellee was inefficient and failed to discharge the duties of his position to the best interest of appellant. The allegation of this general ground is supported by specific allegations showing wherein appellee failed in the performance of his duties, to the effect that he did not work the number of hours a day required for the proper performance of his duties; that he was haughty and discourteous in his attitude toward the store employees, with the consequence that the morale of said employees was destroyed; that he committed unnecessary affronts to customers; that he was unable to understand and utilize the financial reports of the business; that he did not possess the ability to prepare the merchandise budget under which purchases for the store were made; that he was incompetent as a buyer of merchandise; and that he committed a specific act of insubordination when he was requested to move his office; and, further, that such alleged acts of incapacity constituted valid grounds for appellee's discharge, in that appellant was caused to suffer large damages and losses by reason thereof.

The pleadings of the parties are full and complete; appellee's being sufficient as a basis for the judgment, and appellant's being sufficient to raise the questions to be considered on this appeal.

■ At the request of appellant, the trial court made findings of fact on the controverted issues and, at the further request of appellant, made lengthy additional findings. These findings of fact on issues appellant deems material are excepted to, on the ground either that they do not find support in the evidence or that they are so against the great preponderance of the evidence as that this court should set them aside and reverse and remand the case. These findings are based on conflicting evidence, on material issues, and the duty of determining the conflict rested primarily on the trial court. This duty was performed by the trial court in a very elaborate and full findings of fact, and, as these findings are sufficient to sustain the judgment of the lower court, the case must be affirmed, unless the record shows that there are findings by the court, necessary to the judgment, that are not supported by substantial evidence. A very voluminous statement of facts is filed.

Based upon proper assignments of error, appellant presents ten propositions, challenging the sufficiency of the evidence to sustain the material adverse findings of the trial court, that: (1) The finding of the trial court to the effect that it was not appellee's duty to prepare the merchandise report for appellant's store is against the overwhelming preponderance of the evidence, is clearly wrongful, and should be set aside; (2) the finding that the merchandise budget prepared by appellee was adequate and suitable is against the overwhelming weight of the evidence, is clearly wrongful, and should be set aside; (3) under the overwhelming preponderance of the evidence, the finding that appellee did not cause the price of a certain ladies' suit in stock to be reduced to an unauthorized low price, and cause same at such price to be sold to his wife, is wrongful and should be set aside; (4) the highly improper conduct of appellee in removing late at night various papers from the desk of the vice president, in charge of the store, which belonged to appellant's files, is sustained by the overwhelming preponderance of the evidence, and the contrary finding of the court should be set aside; (5) the trial court's finding that appellee's conduct towards the employees of appellant's store was courteous, competent, and efficient is contrary to the overwhelming preponderance of the evidence, and should be set aside; (6) the finding of the court that appellee's conduct toward customers and persons, other than employees, was "courteous and competent," is against the overwhelming weight of the evidence, and should be set aside; (7) the court's finding that plaintiff was not insubordinate in respect to moving his office is against the overwhelming preponderance of evidence, and should be set aside; (8) the finding of the court that appellee began work between 8:30 and 9 o'clock a. m. and left the store at

6 p. m. is contrary to the overwhelming weight of evidence, which shows that appellee's working hours were substantially shorter, and should be set aside; (9) the finding of the trial court that appellee possessed the requisite ability to buy clothing and purchase appropriate clothing for appellant's store is against the overwhelming preponderance of the evidence, and should be set aside; (10) the finding of the court that appellee possessed the requisite ability to understand the financial reports connected with appellant's business, and that appellee considered and acted upon such reports, is contrary to the overwhelming preponderance of the evidence, and should be set aside. Appellant's eleventh proposition is: "The judgment of the trial court should be reversed and the cause remanded, because there being such an overwhelming preponderance of evidence against many of the trial court's most basic findings of fact as to demonstrate that they are flagrantly wrong, and a total lack of evidentiary support for certain of such vitally essential findings (as demonstrated under the preceding Points), this Honorable Court of Civil Appeals has the power and the positive duty, as a matter of law, to set aside said findings of fact and to so reverse and remand."

Each of the ten findings of fact, the correctness of which is assailed by appellant's propositions, 1 to 10, inclusive, relate to a finding on purely evidentiary matter. However, by this statement we do not mean to say that, if such propositions are sustained, such holding would not call for a reversal of this case under appellant's eleventh proposition, above quoted. The latter proposition states the effect of appellant's other specific contentions, and hence depends for its correctness on the holding of this court in reference to the ten preceding propositions.

■ This case is essentially one wholly of fact, to be determined, in the absence of a jury, by the trial court. It was incumbent upon the trial court to perform the functions of a jury, in that the court became the exclusive judge of the facts proven, of the credibility of the witnesses, and the weight to be given their testimony; in other words, to determine where on each disputed fact the preponderance of the evidence lies. Cisco Mutual Life Ins. Ass'n v. Ferguson (Tex.Civ.App.) 8 S.W.(2d) 546; Richardson et al. v. Prospect Hill Missionary Baptist Church (Tex. Civ.App.) 7 S.W.(2d) 179.

■ The trial court, sitting in a case without the intervention of a jury, is cognizant of all the circumstances of the case. He observes the witnesses, their demeanor on the stand, and their manner of giving testimony. Appellate courts can occupy no such favorable position, and hence cannot weigh the testimony of the witnesses and judge of their credibility as intelligently as the trial court; for which reason it has become the rule of appellate courts, when the trial court's findings of fact are sustained by substantial evidence, to regard such findings as binding. It is only when the findings of the trial court are manifestly and clearly erroneous, because not supported by substantial evidence, that an appellate court is warranted in setting aside the findings of a trial court.

3 Texas Jurisprudence, § 771, pp. 1102, 1103, announces this rule in such clear language, supported by such a long list of authorities that we quote it, and also cite the authorities given in the notes to sustain the text: "The findings of the trial court in a case tried without a jury have the same force and are entitled to the same weight as the verdict of a jury; and it is well settled that such findings will not be disturbed by an appellate court where there is some evidence to support them, even though the evidence is conflicting and the appellate court might have reached a different conclusion therefrom. It is also well settled that findings of fact by the trial court will be upheld unless they are manifestly erroneous, and that they will be overruled only where they are without any evidence to support them, or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong."

■ The findings of the trial court attacked by appellee and essential to the judgment rendered have been carefully examined by this court in the light of the able and exhaustive briefs filed by both sides, with the result that we conclude that they are all supported by material evidence, and we adopt them as the findings of this court. It is not deemed necessary to extend this opinion to the unwarranted length that would be required for a specific review of the evidence.

■ It is true that, as contended by appellant, the trial court, in some instances, seemingly rejected evidence of presumably disinterested witnesses and based a find-

ing on the positive and direct evidence of appellee, an interested witness. This the court had the right to do, if the evidence of the interested witness appeared to him to be true. It would be a farce for the law to allow an interested witness to appear before a court and give evidence and, at the same time, not allow such evidence to be given credence, if it be contradicted by a disinterested witness. No such rule obtains in this state, and the evidence of an interested party is to be weighed by the court and jury the same as the evidence of any other witness, except that his interest in the litigation is to be taken into consideration.

It necessarily follows that, in our opinion, this case must be affirmed, and it is so ordered.

Affirmed.